[Civ. No. 8745.   Third Dist.   June 19, 1956.]

ALICE M. BAKER et al., Appellants, v. PETER VAN DOLZER et al., Respondents.

Leonard J. Karsevar for Appellants.

Frank W. Finn for Respondents.

PEEK, J.—This is an appeal by the plaintiffs and cross-defendants from a judgment in favor of the defendants and cross-complainants in an action to quiet title to certain real property situated in Sonoma County. At the conclusion of the trial before the court, judgment was entered in favor of the defendants in the sum of $3,178.24, being the amount of their payments under the contract. The judgment further ordered that a lien be imposed upon the real property as security for the payment of the judgment, and that upon the judgment being duly satisfied the plaintiffs' title be quieted

as against defendants. The plaintiffs now appeal contending first, that the evidence was insufficient to support the findings and judgment; second, that there was no rescission as a matter of law; third, that the agreement for the sale of the real property was forfeited by defendants at the time of the alleged rescission; and fourth, that the court erred in allowing defendants to file their second amended cross-complaint to conform to proof. It is our conclusion that none of such contentions warrants interference with the judgment of the trial court. It is our further conclusion that, except as to such deletions, additions or modifications as are necessary for a determination of the questions raised on appeal, the opinion of the trial court correctly treats and disposes of all issues involved. It is therefore adopted as the opinion of this court and is as follows:

".   .   .   .   .   .   .   .   .   .   .   .

"Plaintiff Alice M. Baker commenced this action against defendants as a simple suit to quiet title. Defendant filed an answer joining issue on all the allegations of the complaint wherein said plaintiff claimed title to the real property described in the complaint. Defendants also filed an amended cross-complaint charging A. W. Baker with fraud in connection with the sale of said property by him to cross-complainants under a written agreement for sale of real estate between A. W. Baker and cross-complainants, executed by the parties and bearing a date of April 12, 1947. The allegations of fraud particularly stressed at the trial were those concerning misrepresentation of the water supply and of the condition of the dwelling house on the premises.

"Both cross-defendants, describing themselves as plaintiffs and cross-defendants, answered the amended cross-complaint admitting the allegations thereof to the effect that A. W. Baker was acting individually and as the authorized agent of Alice M. Baker, his wife, and the allegations of the cross-complaint respecting the amounts which had been paid by cross-complainants on account of the contract as well as the dates of payments. All the allegations of fraud were denied.

"The evidence disclosed that A. W. Baker had, without a valuable consideration, conveyed the premises to Alice M. Baker, his wife, by deed executed and acknowledged one day prior to the verification of the complaint and recorded five days after the filing of the complaint.

"Both cross-complainants testified unequivocally that

prior to signing any writing in connection with their purchase or making any deposit, A. W. Baker stated and represented to them that the well on the property was a good one and that there was plenty of water; that after their making a deposit of $500 and signing a memorandum of agreement on the morning of April 12, 1947, to purchase the property for $9600, payable in installments with interest as provided therein (cross-complainants Exhibit "A"), Baker came to the premises on the afternoon of said date and stated that he had forgotten to tell them that the well was on adjoining property and that three contiguous neighbors, including the occupants of the premises in question, all used the water but there was plenty for all, at which time they inquired more particularly as to the supply and he replied that there was plenty for all the users and enough to give away, whereupon Baker added, in pencil, to the memorandum of agreement the words 'Community all use water all pay upkeep.' Cross-complainants testified that they believed said representations and relied upon them in making the purchase and would not have purchased had they not so believed and had they known that the water supply was insufficient.

"Baker admitted that he had represented that the well was a good one and that there was plenty of water. Later on in his testimony he qualified this to some extent by asserting that he had told them there was plenty of water 'except for irrigation.'

"The evidence in support of the allegations of the cross-complaint with respect to fraud concerning the water supply is clear and convincing and preponderates strongly in favor of cross-complainants. Defendants testified that the well went dry and the pump commenced to suck air about July or August, 1947, and thereafter until the rains commenced in the fall there was an insuffiicent amount of water for the household even with the utmost care and economy in conserving its use and none whatever for the other normal purposes of the 3-acre tract, notwithstanding one of the neighboring users had drilled a new well and was making no draft upon the system connected to the property in question. The testimony of Baker to the effect that he had always had plenty of water and no trouble at all with the water supply was substantially overcome and discredited, not only by the overwhelming testimony concerning a shortage of water in the system in the summer season both before and after 1947, but also by the very clear and convincing testimony of the

witness Dorothy C. Simpson, a school teacher having no interest in the outcome of this litigation, residing on adjoining property, who had in 1944 and prior thereto been a tenant on the 14 acres owned by Baker since approximately 1943 and subdivided by him, of which the three acres in question is one of three parcels all served by said water system at the time of the sale to cross-complainants. Mrs. Simpson testified that she lived on the Imelde property (14 acres) for a couple of years prior to early 1944; that she had occupied the only dwelling house then on the premises; that in November, 1943, Baker came to her and announced that he had bought the property; that she had several conversations with Baker concerning the water supply; that about two weeks after Thanksgiving 1943, in the tank house on the premises, Baker had asked her how good the water supply was, and that she had told him they had had trouble early that summer in that it had taken from two and one-half to three months to fill the tank by steady pumping, and the supply was so low that the pump sucked air, and that on a later occasion, near a Wagner apple tree on the premises, she had told Mrs. Baker that the water supply was not good for a place of that size and that they had had to watch it and pump carefully. It was established that at the time of said conversations there was only one dwelling house on the entire 14 acres; that there was only one kitchen faucet and no bathroom or toilet in the house, and no lawn or garden for lack of water. This witness further testified that her present property adjoined the rear end of the Baker property, and that they had drilled a well thereon in May, 1944, after which, about June, 1944, Baker had come to her and in the presence of her husband and her mother stated that he was short of water and would like to draw water from her well and pipe it to his premises for his livestock. Mrs. Simpson also testified that the water in the well in question was low and insufficient for the use of the premises in 1942 and 1943, and that notwithstanding there was always a good wind for the windmill there were times when the well pumped dry and they had to carry water.

"In view of the foregoing it must be held that the testimony of cross-complainants, corroborated by that of Mrs. Simpson, and partially corroborated by the admissions of Baker himself, clearly establishes fraud in respect to the water supply. There is no doubt that the condition of the water supply and representations in reference thereto were an important and material part of the consideration for the sale.

"In respect to the allegations of fraud concerning the house being new and never having been occupied, the evidence, while not so overwhelming as that on the subject of the water, still fairly preponderates in favor of cross-complainants. They both testified that they commented to Baker that the house appeared to be brand-new, to which he replied in the affirmative and stated that it had never been occupied. Baker's testimony was that he had only replied that it had never been rented, and that he told them it was built out of an old blacksmith shop. The conflict in this testimony must be reconciled in favor of the cross-complainants, not only because the testimony of Baker was substantially impeached in respect to his denial of any knowledge of a shortage of water, but likewise by his own indefiniteness and inconsistencies in other portions of his testimony. For example, at one point, he testified that he truly had no recollection whatever of making the penciled notation on the memorandum of agreement, and, at another, stated he was certain that he had written this on the agreement at his office. At one juncture, he stated he had no recollection whatever of agreeing to list the property, or to sell it for the Van Dolzers in order to get their money out of it for them, yet plaintiffs' Exhibit Number 2 in evidence clearly shows that such a listing was made under date of September 15, 1947. He had no recollection of any complaint about the well, nor of having written the $25 check in evidence which was shown to have been used to repair windmill damage existing prior to the sale. His testimony was in conflict with respect to the state of completion of the house at the time of sale, in that he first testified that at said time they had just about gotten through building or rebuilding it, then later said that it had been finished about a month before the sale, and at still another point admitted that over a couple of months' period he and his wife, his son-in-law and his wife, and his mother-in-law had all occupied the house for different brief periods of time.

"         .    .    .    .    .    .    .    .    .    .    .

"The evidence brought out and established to the satisfaction of the court that cross-complainants, promptly after the discovery of the shortage of water and of the fact that the house was not new, and that it had been occupied, complained of said matters to A. W. Baker and demanded that these matters be made right or that they be repaid their money, and that at said time (the date of which is convincingly established as September 15, 1947, when the listing and

authority to sell was signed by Peter Van Dolzer and accepted in writing by A. W. Baker, as shown by plaintiffs' Exhibit 2 in evidence) Baker stated he could not return their money but would get it out of the deal for them by reselling the place, and that he accepted an agency for that purpose and assumed the trust involved therein, which was never by him disavowed or terminated prior to the time when he conveyed the legal title, which had remained of record in his name, to his wife, and had her commence the action to quiet title.

"Obviously, it is the theory of the Bakers that when the Van Dolzers ceased making payments on the contract about April 1, 1948, they forfeited all rights thereunder. This position is not tenable under the circumstances of this case.

". . . As late as April 22, 1948, the attorney for the Bakers wrote the attorney for the Van Dolzers as follows:

"'Mr. Baker is merely the agent authorized by Mr. Van Dolzer and on behalf of the Van Dolzers. He could not offer it for sale on his own behalf nor in any way except as the authorized agent of Van Dolzers. So far as I know Mr. Van Dolzer still has his contract with Baker and if he wishes to cancel it he can do that in accordance with the authority to sell which he gave to Mr. Baker. It must therefore be specifically understood that the Bakers do not, can not and would not proceed in any matter concerning the sale of the property save and except as the agents of the Van Dolzers.'

"This is corroborative of the continuance of the agency and trust relationship which arose under the facts connected with the listing of September 15, 1947. There is no evidence that such agency was ever terminated or that Baker ever withdrew from the trust assumed by him when he agreed to resell the property and get the Van Dolzers' money out for them. On the subject of this agreement, the court has not overlooked the fact that Baker denies its existence, but here again the evidence preponderates in favor of the Van Dolzers' claim. Not only is Peter Van Dolzer's testimony corroborated by the existence and terms of the written listing agreement, but it is in no way substantially contradicted by Baker who, at one point in his testimony, stated he had no recollection of any complaint about the well, but at another impliedly admitted such complaints when he testified, 'I turned him over to Artie. I never listen to complaints.'

The acceptance of the agency by Baker bound him as a broker to act in the highest good faith toward his principal and precluded him from obtaining any advantage over

his principal in any transaction connected with the agency by the slightest concealment or misrepresentation, and imposed upon him the duty of disclosing any fact within his knowledge amounting to a disavowal of the trust relationship or an intention to deal with the property to his own advantage or to the disadvantage of his principal. (4 Cal.Jur. 569; Rest., Trusts, vol. 1, p. 431, para. 170; Rest., Trusts, vol. 1, p. 553, para. 205; *Langford* v. *Thomas,* 200 Cal. 192 [252 P. 602].)

██ ''Not only was Baker precluded by his trust relationship from taking any advantage of his principal during the continuance thereof, but he was also, aside from the trust relationship, estopped under all the circumstances from declaring a forfeiture against the Van Dolzers. While time was of the essence of the written agreement, all payments were made and accepted after the date upon which they strictly fell due. In addition to this, the agreement to sell the property and get the Van Dolzers' money out' for them put them in a position of not having to keep up the payments and of being relieved of any obligation to further assert their claims of fraud or to rescind the contract on account thereof, so long as they relied upon and were lulled into a sense of security by the promise and continued efforts of Baker to adjust and settle the controversy by selling the property for them. ██ Once a vendor has estopped himself from declaring a forfeiture under the strict terms of an agreement such as that with which we are dealing, or waived the strict provisions thereof in respect to the time of payments, he may not revive his rights to declare a forfeiture without giving unequivocal notice of his intention to do so and a reasonable time and opportunity to comply with the terms of the contract. (25 Cal.Jur. 617 et seq.)

██ ''Plaintiffs and cross-defendants have failed to establish a good title in themselves against defendants and cross-complainants. While they show that the legal record of title stood in the name of Alice M. Baker at the time of the commencement of the action, they failed to establish grounds for the removal of the cloud upon the title created by the contract with the Van Dolzers and their rights thereunder. Only by restoring to the Van Dolzers the amounts paid under the contract can the Bakers' title be cleared. The acts of Baker in deeding the property, without consideration, to his wife, having her bring this suit, and then joining with her in contracting to sell it to Marvin LaMar and Lyndal A. LaMar,

his wife, as shown by the evidence, was a clear violation of trust entitling the Van Dolzers to recover any loss in the value of the trust estate, namely, the total of their payments on the contract, resulting from the breach of trust; further, the establishment of the fraud in defense of the suit to quiet title and under the affirmative allegations of the cross-complaint entitles the Van Dolzers to recover the amount of their payments under the contract, and to a cancellation of the agreement. The evidence showed that the total of said payments was $3,178.24.''

The court thereupon entered its order directing that plaintiffs and cross-defendants pay to defendants and cross-complainants the sum of $3,178.24; that defendants and cross-complainants have judgment against plaintiffs and cross-defendants for said sum, together with their costs; that upon judgment for said amount being duly satisfied plaintiffs' and cross-defendants' title as against defendants and cross-complainants be quieted and defendants and cross-complainants thereupon and thenceforth be debarred from asserting any claim of title under or by virtue of said agreement for the purchase of the real property described in the complaint; and that a lien be imposed upon said real property and all right, title, interest, estate or equity of plaintiffs and cross-defendants, or either of them, therein, as security for the payment of the judgment to defendants and cross-complainants.

In addition to the contentions made before the trial court, which contentions are again made on appeal and which we have concluded were properly determined by that court, plaintiffs now contend that the court erred in allowing defendants to amend their cross-complaint to conform to proof by alleging in Paragraph VIII thereof that, based upon the listing agreement, the sale by plaintiffs to certain other parties was for the account of defendants. It is plaintiffs' contention that such amendment constituted an entirely new cause of action predicated upon a trust relationship, and that they were not warned by the pleadings that the listing contract would be material in a determination of the case. The record, however, shows that during the trial after evidence had been introduced by defendants without objection from plaintiffs regarding the listing contract, and after plaintiffs themselves introduced the document pursuant to a stipulation between the parties, the question concerning an amendment to conform to proof was raised. It should further be noted that at all

times it was plaintiffs' contention that the listing agreement had expired or had otherwise been revoked or terminated. We refer to the comment of the court at the time defendants' motion was granted:

"Now, it is clear, I think, from the language of the cross-complaint as amended and from the original cross-complaint that there has been a theory of the cross-complainants from the start that there was some sort of a promise to refund to them the money that they had in this property. It was perhaps somewhat inartificially pleaded. It is clear from the evidence in the case, which is in without objection, that they have interpreted the listing of the property with the Bakers with the object of selling it and getting their money out of it as a promise to get their money out of it and refund it to them. . . . While I am fully cognizant and sensitive to the situation that a Court should not advise lawyers how to plead their cases, . . . I also deem it to be the law and the duty of a judge that where technicalities of pleading appear that threaten the substantial rights of the parties, the case having been tried upon a certain theory, the evidence is all in, that it is not only the right but the duty of a judge to direct amendments to conform to proof."

It is the well established rule that the granting or withholding of permission to file amendments to pleadings to conform to proof is a matter largely within the discretion of the trial court (*Farnsworth* v. *Hunter*, 11 Cal.2d 27 [77 P.2d 840]), and that the rule should be liberally construed in order that substantial justice is done. (*Carman* v. *Athearn*, 77 Cal.App.2d 585 [175 P.2d 926].) Hence, in the absence of a showing of gross abuse of that discretion, the action of the trial court will not be disturbed on appeal. (11 Cal.2d 27, 31.)

The judgment is affirmed.

Van Dyke, P. J., and McMurray, J. pro tem.,* concurred.

---

ˣAssigned by Chairman of Judicial Council.