[Civ. No. 18281. First Dist., Div. One. July 2, 1959]

CATHERINE A. SULLIVAN, Respondent, v. GEORGE DUNNIGAN, Individually and as Administrator, etc., et al., Appellants.

Phil F. Garvey for Appellants.

Eugene S. Clifford, Alvin H. Baum, Jr., and Heller, Ehrman, White & McAuliffe for Respondent.

WAGLER, J. pro tem.*—This is an appeal from a judgment setting aside a deed on the ground of fraud. Appellants attack the findings as unsupported by the evidence; they also complain of alleged errors occurring at the trial which they contend denied them a fair trial.

---

*Assigned by Chairman of Judicial Council.

Appellants are the heirs-at-law of the deceased widow of respondent's deceased son, George Sullivan.

 When an appellate court is called upon to review the record to ascertain whether or not there is sufficient evidence to support the findings of the trial court, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences must be indulged in to uphold the judgment. When two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].)

 When a finding of fact is being attacked as unsupported by the evidence, the power of the appellate court begins and ends with a determination as to whether or not there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. (*Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Estate of Teel*, 25 Cal.2d 520 [154 P.2d 384]; *Rieger* v. *Rich*, 163 Cal.App.2d 651 [329 P.2d 770].)

When viewed in the light of the foregoing rule there can be no doubt that the findings under attack are adequately supported by the record.

Respondent-plaintiff was 75 years of age at the time of the execution of the deed in question and 85 at the time of the trial. Her husband died in 1906, leaving her a "nice little bit of money." She thereafter supported herself, and her two minor sons, George and John, by a few nursing jobs and by taking in boarders. She suffered from defective vision all her life and left school in the second grade because she "couldn't see the books, or read." She had cataracts for many years which were operated on in October 1948. Her son George lived with her all his life and after his marriage his wife Elizabeth also came to reside with respondent.

Respondent successively owned several parcels of real property. In March 1948 she acquired an undivided one-half interest in a house located at 4101 Balboa Street, San Francisco, the property involved in this litigation. The same deed conveyed to her son George and his wife Elizabeth Sullivan the other half, as joint tenants. George and Elizabeth resided with respondent at the Balboa Street address until the death of George in January 1949, and of Elizabeth in December 1955.

Immediately prior to the acquisition of this property, the

three had resided for a short time in a house on Kirkham Street, title to which was apparently in the name of all three as joint tenants. Proceeds from the sale of the Kirkham Street property were applied on the purchase of the property in question. Prior to the acquisition of the Kirkham Street property respondent had owned other real estate as sole owner. Respondent testified that she had the names of George and Elizabeth put on the Kirkham Street deed but that they did not contribute toward the purchase price and she did not understand that the effect thereof was to give them a present interest in the property. She did the same thing when the Balboa Street property was acquired but again she did not understand that they were acquiring a present interest therein or that all of it would go to George and Elizabeth if she died. She testified further that her other son John had made the down payment on the latter property amounting to $500 and she intended that both sons should share in the property in the event of her death.

It appears from the record that the relations between respondent and George and Elizabeth were always amiable. When their names were put on the Balboa Street property they kissed her and Elizabeth said to George, ''What a grand mother you've got.'' Elizabeth read respondent's letters for her and continued to reside with her after George's death and until her own demise. It thus appears that both George and Elizabeth enjoyed respondent's trust and confidence throughout the lifetime of each.

The deed in question was executed on March 31, 1948. By it respondent conveyed her undivided half-interest to George and Elizabeth reserving to herself a life estate. It was prepared at the request of Elizabeth by an attorney who was employed by the company which also employed her. It was acknowledged before a notary public who went to the Sullivan residence, also at the request of Elizabeth, for that purpose.

Respondent testified as to the events surrounding the execution of the deed substantially as follows: She first heard of the ''paper'' just before 6 p.m. on March 31, when George, who had undergone a major operation, returned unexpectedly from the hospital. George was very sick at the time and ''could hardly talk''; he told her to sign the paper to take his name off of her property. ''Elizabeth wanted to take his name off. . . .'' (George died about 10 months thereafter.) She could not read the paper and the notary did not read it to her. It looked like a ''piece of plain paper.'' She also testi-

fied at some length concerning her poor eyesight at the time and that she received no money from George or Elizabeth and that she was not indebted to them at the time. Although the record indicates that at times respondent became somewhat confused her account appears to have been quite consistent. In any event, her credibility was a question solely for the trial court. (*Hurley* v. *Behnke*, 212 Cal. 761 [300 P. 820].)

Under the circumstances above set forth, it would appear that the finding that the deed was procured without consideration is supported by substantial evidence. This fact coupled with the confidential relationship of the parties, the activity of the grantees in procuring the execution of the deed and the physical condition of respondent would give rise to a presumption that the deed was procured by fraud. (*Campbell* v. *Genshlea*, 180 Cal. 213 [180 P. 336] ; *Herbert* v. *Lankershim*, 9 Cal.2d 409 [71 P.2d 220] ; *Pleasants* v. *Hanson*, 48 Cal.App. 626 [192 P. 183] ; *Longmire* v. *Kruger*, 80 Cal.App. 230 [251 P. 692] ; *Mead* v. *Mead*, 41 Cal.App. 280 [182 P. 761].) Add to this presumption the direct testimony of respondent that the ''paper'' was represented to her as accomplishing something entirely different than it actually did, and the conclusion that the finding of fraud is supported by substantial evidence becomes inescapable. (*Rieger* v. *Rich*, 163 Cal.App.2d 651 [329 P.2d 770].)

As special defenses to the instant action appellants pleaded the defense of laches, numerous sections of the Code of Civil Procedure, relating to the limitation of actions, and section 1691 of the Civil Code, which requires that an action for rescission be brought promptly.

It should first be noted that the instant action is not one for rescission under Civil Code, section 1691, but rather an action to cancel a void instrument. In her complaint respondent alleged that she signed the writing merely to insure that the undivided one-half then held in joint tenancy by George and Elizabeth would pass to Elizabeth upon the death of George. Her testimony heretofore summarized would support the finding that she had no present intention to part with title to the interest purportedly conveyed. Hence the deed in question would be void and subject to cancellation rather than rescission. (*Zakaessian* v. *Zakaessian*, 70 Cal.App.2d 721 [161 P.2d 677].) In Zakaessian (decided on demurrer), the court held at pages 724, 725, that the allegation that grantor did not intend to vest title in grantee was equivalent to an allegation

of nondelivery and that therefore plaintiff was seeking to cancel a deed that was void. The theory that a purported deed signed by the grantor under a misapprehension that the document was something other than a deed, is "not delivered" and therefore wholly void was adopted also in the well-reasoned case of *Sparks* v. *Mendoza*, 83 Cal.App.2d 511 [189 P.2d 43] ; see also *Cutler* v. *Fitzgibbons*, 148 Cal. 562 [83 P. 1075].

Since the instant action is one for relief on the ground of fraud the only relevant statute of limitations is that set forth in Code of Civil Procedure, section 338, subdivision 4. (*Zakaessian* v. *Zakaessian*, 70 Cal.App.2d 721, *supra*.) This section requires that such an action be brought within three years from "The discovery . . . of the facts constituting the fraud. . . ." Respondent testified in this regard that the deed was not mentioned to her until after Elizabeth's death when her son John discussed it with her. Its purport took her quite by surprise.

Appellants argue that respondent was negligent in not discovering the fraud sooner and that since the deed was a matter of record she should be treated as if she had done so. This argument is not supported by legal authority. Negligence in failing to discover the falsity of a statement is no defense when the misrepresentation is intentional rather than negligent. (Prosser, Torts, pp. 402, 748; Rest., Torts, § 540; *Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291] ; *Security-First National Bank* v. *Earp*, 19 Cal.2d 774 [122 P.2d 900] ; *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958].) Respondent is not held to constructive notice of the public records because the purpose of the recording acts is to afford protection to bona fide purchasers not to those making fraudulent misrepresentations. (*Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291].) Nor does the fact that an investigation would have revealed the falsity of the representation bar respondent's right to recover. In view of the confidential relationship existing between the parties, respondent was under no duty to investigate. (23 Cal. Jur.2d 80; *Kane* v. *Mendenhall*, 5 Cal.2d 749 [56 P.2d 498] ; Prosser, Torts, pp. 750, 751.)

The finding that respondent was not guilty of laches is also supported by substantial evidence. Laches is largely a question of fact and in determining what length of time constitutes laches, consideration will be given to the circumstances that may have justified the delay, to the nature of the case and to the possible existence of prejudice to the

defendant or other interested parties. (*Swart* v. *Johnson*, 48 Cal.App.2d 829 [120 P.2d 699] ; *Roberts* v. *Roberts*, 81 Cal. App.2d 871 [185 P.2d 381].) ▮ Circumstances which justified the delay in discovery of the fraud in question have already been discussed. Respondent learned the true facts as to the effect of the deed on December 30, 1955. She filed the instant action in June 1956. It appears therefore that respondent acted with reasonable diligence after the discovery. (See *Cella* v. *Cosgro*, 115 Cal.App.2d 816 [253 P.2d 57] ; *Brown* v. *Oxtoby*, 45 Cal.App.2d 702 [114 P.2d 622].) Since respondent did not discover the true facts until *after* the *death* of both George and Elizabeth, no change. in circumstances (after the discovery) detrimental to appellants was shown. (See *Dabney* v. *Philleo*, 38 Cal.2d 60 [237 P.2d 648].)

▮ Appellants also attack the judgment on the ground that the court failed to make findings on all material issues. They base this contention on the fact that the court found that each and every *allegation* set forth in stated paragraphs of defendants' answer was untrue but failed to make an express finding with reference to the *denials* contained therein. We consider the term allegation to be sufficiently broad to include both affirmative averments and denials. (See *Cecchini* v. *Ridinger*, 136 Cal.App.2d 8 [288 P.2d 146].) Furthermore, the court's finding that all of plaintiff's material allegations were true, necessarily included a denial of the truth of defendants' denials with reference to those same allegations. (*Popescu* v. *Popescu*, 46 Cal.App.2d 44 [115 P.2d 208].)

Finally, appellants contend that the judgment should be reversed because the trial court (1) erroneously denied their motion for nonsuit, (2) denied them the privilege of arguing in support thereof, and (3) unreasonably curtailed their cross-examination of respondent.

▮ Since the evidence submitted to the court supports its findings, the denial of the nonsuit presents a question that is now moot and need not be considered. (*Burrows* v. *Burrows*, 136 Cal.App. 323 [28 P.2d 1072].)

▮ In *Garcia* v. *San Gabriel Ready Mixt*, 155 Cal.App.2d 568 [318 P.2d 145], relied upon by appellants (a jury negligence case), a judgment was reversed because of the court's refusal to permit counsel to argue with respect to a second cause of action and to submit the second cause of action to the jury. The case is not in point here where only a motion for a nonsuit was involved. If the motion was properly decided, and

we so find, we would not reverse merely to give counsel an opportunity to make an argument. (See *Nicholson* v. *Nicholson*, 174 Cal. 391 [163 P. 219].)

Appellants' complaint that their cross-examination was unreasonably restricted is also without merit. The only curtailment of cross-examination to be found in the record relates to questions addressed to respondent concerning the honesty of her deceased son, George. After several questions and answers relating to this point the court indicated that it had heard enough and instructed counsel to desist. A trial court has a clear duty to supervise the conduct of the trial to the end that it may not be unduly protracted and that other litigants too may have their day in court. In carrying out this duty the court may confine cross-examination within reasonable limits and may curtail cross-examination which relates to matters already covered, or which are irrelevant. These are matters clearly within the court's discretion and only a manifest abuse thereof will require a reversal. (*Melvin* v. *Berendsen*, 7 Cal.App.2d 389 [46 P.2d 189].) We cannot say that the record discloses any abuse of discretion or that as a reasonable probability the facts sought to be elicited would have affected the result.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied July 30, 1959.