[Civ. No. 18899.   First Dist., Div. One.   May 10, 1960.]

JULIANNA GILLETTE, Appellant, v. CHARLES M. GILLETTE et al., Respondents.

Francis Heisler, Charles A. Stewart and Patricia Lane for Appellant.

Hudson, Martin, Ferrante & Street and Webster Street for Respondents.

DUNIWAY, J.—Appellant appeals from a judgment by the court, sitting without a jury, refusing to set aside a property settlement agreement. The agreement was entered into during the trial of a contested divorce action, approved by the court and "confirmed and made a part of this decree." The interlocutory decree was made on October 7, 1952, and final decree on October 8, 1953. This action was filed on December 2, 1953. It went to trial on July 14, 1958, on a fourth amended complaint and separate answers of Charles M. Gillette and of Emalia Heimrath and James T. and Lucille Gillette. The cause was tried on July 14, 15, 16, and 29, and on December 29 and 30. The court found against appellant on all issues and judgment was entered accordingly.

The complaint charged a conspiracy between defendants and appellant's attorney in the divorce action to defraud appellant of her property, and extrinsic fraud of defendant

Charles Gillette, and duress by him, in procuring the property settlement agreement. The pretrial order directed that the issue of conspiracy be first tried, and this was done.

As nearly as we can make them out from the briefs and oral argument, appellant raises three principal points on this appeal: 1. Was she deprived of her day in court because the court refused to hear oral argument or accept briefs at the conclusion of the trial? 2. Did the court commit prejudicial error in excluding various items of proffered evidence? 3. Is one of the findings contrary to the evidence? If so, does it matter? We find no merit in the appeal.

It is not contended that there was not sufficient evidence to support the findings and judgment, except in one particular, and we therefore do not state the facts in detail. However, the background of the litigation is of some importance.

Appellant and defendant Charles Gillette (Charles) were married in 1936 and separated in 1946. On March 27, 1951, appellant sued Charles for divorce, charging extreme cruelty and desertion. The important properties of the parties were a motel known as Piney Woods and a combination store and apartment house building located on Mission Street, both situated in the city of Carmel. Appellant alleged in her complaint for divorce that three unimproved lots contained in the Piney Woods property, the Mission Street building, a truck and station wagon, and bank accounts located in a designated bank were community property, and that two lots with houses thereon, comprising the remainder of Piney Woods, and 3,400 shares of mining stock were her separate property. In addition to the divorce, she prayed for alimony in the sum of $150 a month, equal division of the community property and the setting aside to her of her separate property.

Charles denied appellant's charges, admitted that the property so designated by her was community, denied that any of the alleged separate property was separate, except for the original cost of Lot 11 in Piney Woods, paid by appellant before the marriage, and denied his ability to pay alimony. He cross-complained for divorce, alleging extreme cruelty, and asked for an equitable division of the community property.

· At the trial of the divorce action, Charles was cross-examined as to claimed acts of adultery, and appellant testified at length as to acts of cruelty. She also gave considerable testimony about the parties' properties. The court expressed its satisfaction that appellant had proved cruelty, and suggested that the parties see whether they could agree about the prop-

erty. Thereupon the reporter was dismissed. Charles produced no evidence upon his answer or cross-complaint.

Noon recess was then taken, and during that time Charles' attorney typed up a property settlement which was signed by both parties and their attorneys. Under that agreement, appellant was allotted the Mission Street building and its furnishings, and Charles received the Piney Woods property, including Lot 11, along with the accompanying furnishings. The parties retained such other property as was held by them, and appellant accepted the property awarded to her in full satisfaction of her rights to alimony. She was then awarded a default divorce decree, and the agreement was approved by the court and incorporated therein.

In this action the defendants are Charles, his brother James, James' wife Lucille, and Emalia Heimrath, Charles' present wife. Appellant charged that these defendants and her attorney in the divorce action conspired to conceal assets from her, deprived her of a fair trial, and caused her to agree to part with her separate property and an unduly large portion of the community property. The attorney died about six months after this action was filed.

1. *Appellant was not deprived of her day in court.*

At oral argument, counsel stated, in substance, that the fundamental defect in the proceedings below is that the court refused to hear oral argument or receive briefs, so that counsel had no adequate opportunity to explain his theories to the court or to analyze the evidence in the light of those theories. It is asserted that the bifurcated nature of the trial, and the long recess, made it particularly important that such arguments and briefs be presented. In this connection, counsel points to a statement of the court indicating that, until reminded by counsel, he had forgotten that a certain witness had testified.

After examining the transcript, we have concluded that the point is without merit.

In the first place, "Oral argument in a civil proceeding tried before the court without a jury, is a privilege, not a right, which is accorded to the parties by the court in its discretion." (*Oil Workers Intl. Union* v. *Superior Court*, 103 Cal.App.2d 512, 581 [230 P.2d 71]. And see *Golden Gate Lbr. Co.* v. *Sahrbacher*, 105 Cal. 114 [38 P. 635]; *Nicholson* v. *Nicholson*, 174 Cal. 391 [163 P. 219]; *Koyer* v. *Wilmon*, 12 Cal.App. 87, 92 [106 P. 599]; *Center* v. *Kelton*, 20 Cal.App.

611, 615-616 [129 P. 960]; *Hallinan* v. *Superior Court,* 74 Cal.
App. 420, 425-426 [240 P. 788]; *Dam* v. *Bond,* 80 Cal.App.
342, 346-357 [251 P. 818]; *Larson* v. *Blue & White Cab Co.,*
24 Cal.App.2d 576, 578 [75 P.2d 612]; *Gunn* v. *Superior
Court,* 76 Cal.App.2d 203 [173 P.2d 328]; *Rieger* v. *Rich,* 163
Cal.App.2d 651, 667 [329 P.2d 770]; *Sullivan* v. *Dunnigan,*
171 Cal.App.2d 662, 669-670 [341 P.2d 404].) We do not
mean to imply that there can never be a case in which the
court's refusal to hear argument would be erroneous. That
such a case might arise is indicated in the Center, Dam and
Larson cases, *supra.* But this is certainly not such a case.

In the second place, a review of the transcript indi-
cates that counsel did have ample opportunity to argue the
case. Much of the transcript is taken up with argument,
usually arising on objections to evidence, during the course of
which counsel iterated and reiterated his theories as to the
significance of the evidence then in question, in the light of
his theories as to the entire case. It is difficult to see how a con-
cluding argument would have been anything but repetitious.

In the third place, counsel did not ask to argue the
case. When all evidence had been presented, the court in-
quired: "The matter stands submitted?" to which the plain-
tiff's counsel replied, "That's right, Your Honor." There fol-
lowed a brief discussion of one phase of the case, at the conclu-
sion of which counsel asked permission to submit a memo-
randum on one point of law only. At this point the court
interrupted, saying: "No, Mr. Heisler; the case does not
justify argument; it doesn't justify briefing; it doesn't justify
any of the time that's been spent on it. It doesn't justify
all the long depositions that have been taken in it. There's
no action whatsoever here. The plaintiff is not entitled to
anything whatsoever by this complaint. There is no conspiracy
as far as Smith is concerned or the parties are concerned. All
matters are res judicata and there is no extrinsic fraud of any
kind. Judgment in favor of the defendants, all of the defend-
ants, and against the plaintiff." The court's remarks are fully
supported by the record; it was more than patient in hearing
counsel throughout a rather protracted trial. The time had
come to terminate the matter, and the court quite properly
did so.

2. *There was no prejudicial error in any rulings com-
plained of.*

Appellant feels aggrieved because, in her view, the
court made inconsistent rulings as to whether a prima facie

case of conspiracy had been made out, so as to make applicable the provisions of Code of Civil Procedure, section 1870, subdivision 6. She is not able, however, to show any prejudice. After first expressing doubts, the court later ruled that a prima facie case had been made out, and let in substantially all evidence offered, including statements of her attorney before the conspiracy was claimed to have commenced, and a harangue at her attorney, after the claimed conspiracy was over, which was made by one Mrs. Sargent, who seems to have constituted herself a sort of general busybody in appellant's behalf. Finally, after hearing all evidence that appellant desired to offer as to conspiracy, the court stated that conspiracy had not been sufficiently proved, and went on to the other issues. We fail to see any prejudice. Indeed, the court was sufficiently liberal in admitting evidence that there might well have been error if the court had decided the issue the other way. Practically all of the evidence that was excluded before the court ruled that a prima facie case has been made out was admitted after the court so ruled.* What little was not admitted could not possibly have had any substantial influence upon the result. ▮▮▮ In several instances, grounds for admissibility are urged that were not presented to the trial court. They may not be raised for the first time on appeal. (*Hession* v. *City & County of San Francisco,* 122 Cal.

---

*Thus, appellant claims that she was prejudiced because the court sustained an objection, on the ground of hearsay, to a question as to whether her attorney had stated a reason for coming to see her on a day when Charles was also present. This was before the court indicated that a prima facie showing of conspiracy had been made out. Appellant did not, after that ruling, ask the question again. It does not appear what the answer would have been. (*MacDonnell* v. *California Lands Inc.,* 15 Cal.2d 344, 348-349 [101 P.2d 479].) Moreover, what took place on that occasion was fully explored. Again, before the ruling, the court excluded evidence as to what her attorney told appellant when the property settlement was drawn up. After the ruling, this evidence was admitted. Objection was sustained to a question whether Charles had told anyone he would prevent the judge in the divorce proceeding from hearing about his living with other women. This was offered *after* the portion of the trial dealing with conspiracy was concluded. Appellant claims error, but did not seek to reopen on the issue of conspiracy. She now claims this was admissible on the issues of conspiracy and of duress. But the evidence shows that at the divorce trial, Charles was extensively questioned about relations with other women, and evidence was received that appellant's then attorney took no depositions, that none of the women involved was present at the divorce trial, etc. Objection was sustained to a question directed to Thompson, Charles' attorney in the divorce case, as to whether appellant's then attorney had ever suggested that appellant could be entitled to more than one half of the community. But the court asked substantially the same question, and it was answered.

App.2d 592, 605 [265 P.2d 542] ; *Valentin* v. *Valentin,* 93 Cal. App.2d 588 [209 P.2d 654] ; *People* v. *Brown,* 43 Cal.App.2d 430 [110 P.2d 1059].)

During the trial of the conspiracy issue, Charles stated that on the date of the divorce trial he lived on Grove Acres Avenue, Pacific Grove. Counsel then sought to show that, in the divorce trial, he stated that he lived at Piney Woods, Carmel. Objection that this was impeaching on a collateral matter was sustained. Appellant now claims that the question was proper on the issue of conspiracy and duress. However, the matter of where Charles lived and what he did at the time of the alleged conspiracy was fully explored. There was no error. The same can be said of attempted impeachment of Charles regarding a loan to his brother, repaid in 1946, some six years before the alleged conspiracy.

Appellant also complains that the court refused to receive in evidence letters written by Mrs. Sargent to the Santa Cruz Bar Association and The State Bar. These were properly excluded as hearsay. At the trial it was claimed that these letters were admissible to confirm the testimony of Mrs. Sargent. It is now claimed that they are rehabilitating evidence properly admissible to counteract an attempt to show "recent contrivance" by appellant of her claims. To this there are two answers: (1) that the letters were offered long before any showing of recent contrivance was made, and (2) that in any event Mrs. Sargent's letters can hardly rehabilitate appellant.

During the war, appellant, who was of Austrian extraction, was called before a judge to take an oath of loyalty. She offered to show that she asked the judge why, and that he said that someone had denounced her, but would not say who. The materiality of this "evidence" is not apparent; its remoteness is obvious. The same is true of her proffered testimony that, during the war, James called her a Nazi, and Charles, who was present, did not defend her.

Finally, and returning to the ubiquitous Mrs. Sargent, appellant claims error in the court's refusal to allow Mrs. Sargent to state what she told the police, whom Mrs. Sargent had called during an altercation between appellant and Charles. It is claimed that this would have some bearing on appellant's state of mind. The evidence proffered was hearsay, and we cannot see either that it was material or how its exclusion could possibly require a reversal.

### 3. *Finding V is supported, and in any event is immaterial.*

■■■■■ Paragraph IX of the complaint stated that during the recess of the divorce trial appellant's then counsel and Thompson, Charles' counsel, drew up the property settlement; that appellant signed the agreement "[i]n the circumstances and for the reasons hereinafter stated" [this reference is to more than three subsequent pages of the clerk's transcript]; that upon resumption of the trial, "the Court inquired if the parties had reached a settlement of the property rights and further inquired whether 'the lion's share had been awarded to plaintiff,' to both of which inquires [*sic*] plaintiff's attorney answered in the affirmative, well knowing such answer to be false"; and that the court thereupon entered its decree.

In its finding number V, the court below stated that the allegations of this paragraph were untrue except as admitted by Paragraph IX of Charles' answer, which admits only that appended and incorporated copies of the settlement and decree are true copies.

Appellant urges that there was no dispute that the judge at the divorce court made the inquiries alleged, nor that her counsel answered in the manner alleged. Since one of her main arguments for conspiracy was the deliberate misleading of the divorce court, she continues, and since the court below "admitted" that it did not remember the testimony of Thompson (a statement considerably exaggerated and quite unfair to the court which said "I remember now"), the court by finding against "this admitted fact" showed that it did not consider appellant's case.

Defendants argue that the evidence did not support the allegations regarding the "lion's share," and refer to Thompson's testimony. Thompson testified that the court had inquired as to whether appellant was given the lion's share, and that appellant's counsel had answered in substance that the agreement gave appellant the "best property," or "most of the property," or "what she wants." It may be seen, therefore, that appellant is correct in arguing that it was undenied that the court made the inquiry alleged. However, that the court found that appellant's counsel did not assent to the questions of the judge in the divorce action, "well knowing his answers to be false," is adequately demonstrated by other express findings made.

But in any event, the court was explicit in its finding that no conspiracy existed between appellant's counsel and Charles

or the other defendants. A false answer by her counsel would therefore be immaterial in determining defendants' liability to appellant. ▇▇▇ ''If there are unobjectionable findings that amply support the judgment, findings on other issues become immaterial, and the fact that they are contrary to the evidence is not ground for reversal. It is only when a judgment rests on some particular findings for its validity and support that lack of sufficient evidence to support the findings become material. Complaint may not be made of an unsupported finding that, had it been made the other way, would not have affected the judgment.'' (48 Cal.Jur.2d, 304-305, § 303.)
Affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied May 31, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 6, 1960.