[No. D018807. Fourth Dist., Div. One. July 28, 1995.]

TOMMIE H. SWEAT et al., Plaintiffs and Appellants, v.
ALLEN HOLLISTER et al., Defendants and Respondents.

## COUNSEL

Goria & Weber and Charles F. Goria for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs, Charles S. Haughey, Jr., William P. Buranich, Keithly & Keithly and Sandra L. Keithly for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—This appeal is brought by the plaintiffs from a summary judgment in favor of all defendants. Plaintiffs, purchasers of a residence in

the City of Poway, sued defendant sellers as well as the sellers' real estate representatives. The trial court ruled that no triable issues of fact existed as to certain crucial issues upon which the plaintiffs' complaint depended, that as a matter of law the facts adjudicated did not support a cause of action, and hence granted judgment for the defendants. The court also awarded costs and substantial attorney fees to all defendants. Plaintiffs appeal the granting of summary judgment as to all defendants and also the awards of attorney fees.

The plaintiffs raise several grounds of appeal. The grounds are generally separate and independent, but they build on one another factually. We will therefore progress from one issue to another, layering the facts as we go.

1. *Summary Judgment in Favor of Brokers*

Plaintiffs were represented in this real estate purchase transaction by their own real estate broker, who was not named as a defendant. Although joined by cross-complaints, the plaintiffs' broker is not a party to the appeal. Plaintiffs directly sued the real estate professionals representing the sellers. These were Century 21 Tres Ranchos, Inc. (the brokerage firm), Juanita Harmon (the owner of the firm and its broker), and Peggy Calhoun (the listing agent). Since the grounds upon which liability of these three parties might be based appear to be identical, we will treat the parties as if one party and refer to them collectively as "brokers."

The complaint alleges that the brokers participated in misrepresentations or failures to disclose material information in their representations concerning the property, and particularly in their preparation and delivery of the real estate transfer disclosure statement.[1] The specific false statement alleged to have been contained in the disclosure document was that there existed no "nonconforming use" relative to the property. The disclosure statement revealed that the property was in a designated floodplain. The defect or nonconforming use which allegedly was not revealed was that because of the status of location in a floodplain the provisions of the Poway Municipal Code prevented the property from being altered or enlarged in the event of destruction by fire or other calamity. Plaintiffs alleged that this concealed defect caused the value of the house to be reduced by $215,000.

In approaching our review of this ruling we find it helpful to refer to the analysis of scope of review contained in *AARTS Productions, Inc.* v. *Crocker*

---

[1] Civil Code sections 1102 through 1102.15, adopted in 1985, require the preparation and delivery by the seller and the seller's agent (in most private sales) of a real estate transfer disclosure statement, including a statutory form which must be completed. The form includes a checklist to give notice, among other things, of the existence of a "nonconforming use."

*National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], which we quote: "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. [Citations.] First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.] [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] The motion must stand self-sufficient and cannot succeed because the opposition is weak. [Citations.] [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.] . . . A sufficient motion cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings."

Our first step in analyzing the summary judgment, therefore, is to examine the pleadings—in this case the original complaint. Although the complaint is framed in several alternative causes of action (failure to make written disclosures, deceit, negligent misrepresentation, suppression of fact), all counts are based on the sole factual contention mentioned above: that in their disclosure statement the sellers and their brokers failed to mention that the property was subject to a "nonconforming use." It is important that we focus on this singular contention. In the court below, as well as on appeal, plaintiffs refer to evidence they claim would show that the structure did not meet current building code requirements. They mentioned as another undisclosed detriment the fact that the house had been moved onto the lot from another location. These assertions are, however, irrelevant to the summary judgment motion. The sole failure of disclosure set forth in the complaint is inability to repair the home under certain circumstances because of building restrictions applicable to floodplain areas in Poway. Other misrepresentations or failures to disclose may indeed have been contained in the disclosure statement. They were not, however, pleaded. The issues at summary judgment cannot be expanded by affidavit; if the plaintiff's claim is to be extended it must be done by amendment. (*580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 18 [272 Cal.Rptr. 227].) No amendment was sought here, and hence the plaintiffs were limited to their one specific allegation of misrepresentation.

We therefore look to the moving parties' affidavits. They presented to the court excerpts from the Poway Municipal Code which defined "nonconforming use" to mean "a use lawful when established but which does not conform

to the provisions of this title." They also provided evidence in the form of communications with officials of the City of Poway which established that the property, while subject to restrictions on improvement or alteration because of its location in a floodplain, was not a "nonconforming" land use.

The plaintiffs' opposition documents do not undermine the factual premises of the moving papers. Plaintiffs' position was based on the concept that the house was the victim of "locational obsolescence" because since its erection on (or move onto) its lot the City of Poway had adopted a "flood reduction ordinance" which made improvement or rebuilding of the structure, in the event of partial destruction, economically unfeasible. It is the failure to point out this defect in the property which plaintiffs claim to have been deceit, misrepresentation, or at least a material omission from the disclosure statement.

Our independent consideration of this claim leads us to agree with the trial court: that there is no material issue of fact and the facts admitted do not support liability on the part of the defendants. The *factual* matter leading to the alleged defect in the house—that it was in a floodplain—was revealed to the plaintiffs. The legal and practical effects of this state of affairs do not rise to the status of a fact—they are conclusions as to value resulting from the fact of situs in a flood plain. The existence and effect of city ordinances regulating rebuilding or improvement of a house in a floodplain constitute information as readily available to the plaintiffs as to the defendants. Actionable nondisclosure relates to facts not discoverable by the plaintiffs. (*Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 404 [264 Cal.Rptr. 779].)

To summarize our conclusions: we believe that the common law disclosure requirements imposed upon the seller of real estate and his broker, as well as the more recent statutory disclosure requirements (Civ. Code, § 1102 et seq.)[2] require revelation of all factual matters bearing upon the quality of the property being sold which might be detrimental to value. Such factual matters would include, for instance, that the property was constructed on filled land, that the structure was in violation of building codes or zoning ordinances, that the structure had been condemned, and that it was termite ridden. (See citation of examples contained in *Reed* v. *King* (1983) 145

---

[2]The genesis of this legislation was *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521], which imposed liability on a seller of real property and his agent for failure to disclose facts affecting the value of residential property. The legislation was sponsored by the California Association of Realtors to provide a framework for formal disclosure of facts relevant to a decision to purchase realty. The statute therefore confirms and perhaps clarifies a disclosure obligation that existed previously at common law. (See Sen. Bill No. 1406 (1985-1986 Reg. Sess.) 3d reading analysis, Aug. 20, 1985.)

Cal.App.3d 261, 266, fn. 5 [193 Cal.Rptr. 130].) In a recent decision by our court we found that failure to warn of the existence of noisy and troublesome neighbors constituted a violation of the obligation of full disclosure. (*Alexander* v. *McKnight* (1992) 7 Cal.App.4th 973 [9 Cal.Rptr.2d 453].)

The legal ramifications of the factual nature of realty, however, and a conclusion as to how they may adversely impact value, is not a "fact" subject to required disclosure. If the buyer of property is accurately informed as to the zoning, for instance, we believe it is not necessary for the seller also to advise concerning the detrimental aspects of any specific zoning. We think that this principle applies as well to the disabilities associated with owning a house located in a floodplain. That disabilities may exist should be obvious to any buyer. It is not the obligation of the seller to research local land-use ordinances and advise a buyer as to their effect on the realty.

## 2. *Summary Judgment in Favor of Sellers*

Sellers, Allen and Susan Hollister, also sought summary judgment on the same grounds set forth by their brokers. That judgment in favor of sellers was justified and can be sustained on the same set of arguments presented above in connection with brokers' motion. The appeal from the judgment in favor of sellers, however, has an added twist. It derives from the somewhat unusual procedure preceding the granting of judgment.

The two motions for summary judgment were consolidated for hearing. In accordance with local rule the court, on August 28, 1992, issued a telephonic decision granting both motions for summary judgment.[3] On that same date plaintiffs requested and obtained a hearing for oral argument set for September 4, 1992. On September 3, 1992, plaintiffs filed a request for dismissal without prejudice of the complaint against sellers, and dismissal was entered by the court clerk the same day. After further paperwork and delays, the court ultimately formalized its summary judgment ruling in favor of all defendants, including a grant of fees and costs, which judgment was entered

---

[3]The ruling was as follows: "Good cause having been shown for the timing of the motion, the court grants summary judgment in favor of defendants and joining parties and against plaintiffs. Defendants have set forth evidence to indicate that the property is not a nonconforming use in violation of any provision of the Poway Municipal Code and that the plaintiffs were informed that the property was situated in a flood plain. Declaration of Juanita Harmon; letters of Streeter and Eckis; Real Estate Disclosure Statement signed by [plaintiff] Messina; deposition of Messina. Plaintiffs have set forth no evidence which would controvert these assertions."

on March 26, 1993.[4] The grant of costs to the Hollisters in the amount of $19,731, including an attorney fee award of $18,675, was confirmed after denial of a motion to tax by court minute order dated May 14, 1993.

As to the Hollisters, plaintiffs contend the award of attorney fees was error because (1) attorney fees should not have been awarded since all causes of action were for tort, not contract; and (2) it was error to award fees because the case had been dismissed before the award was made, thereby depriving the court of jurisdiction.

The first contention requires only brief discussion. Citing our decision in *Super 7 Motel Associates* v. *Wang* (1993) 16 Cal.App.4th 541 [20 Cal.Rptr.2d 193], plaintiffs argue that attorney fee clauses in contracts permit awards only when the action is on the contract, and do not support awards for actions in tort, as were all the claims in this case. Plaintiff correctly reflects the ruling in *Super 7*, but fails to note that in that case the basis for seeking fees was Civil Code section 1717. This section provides reciprocal entitlement to fees whenever a contract contains a provision for fees for one party, but the introduction to the section limits its provisions to "any action on a contract." Hence, when the basis for a fee award is Civil Code section 1717 the action must have been in contract, not tort.

The authority for fees in this case is not Civil Code section 1717, but Code of Civil Procedure[5] section 1021, which simply states that other than provided by statute "the measure and mode of compensation of attorneys . . . is left to the agreement . . . of the parties."[6] As explained in *Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338 [5 Cal.Rptr.2d 154], this authorizes an agreement to an award of attorney fees not only in contract but also in tort cases. In that case the court affirmed the entitlement to fees in an

---

[4]During trial proceedings involving the summary judgment motions the court considered the possibility of the existence of a triable fact as to whether brokers (of record as representing only the sellers) were actually also engaged in a dual agency on behalf of buyers. Upon further consideration of deposition excerpts subsequently filed by the defendants, however, the court concluded that this contention did not rise to the level of disputable fact, and refused to allow an amendment to the complaint which would have alleged dual agency. Although this history is related at length in appellants' brief, it is not identified as any basis for appellate consideration or possible reversal. We therefore do not address the issue.

[5]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[6]Plaintiffs contend that we cannot ground the attorney fee award on section 1021 because the authority cited for the fee petition in the trial court was Civil Code section 1717. While it is true that sellers' initial petition for fees was based on Civil Code section 1717, augmented paperwork filed before the fee award became final did include reference to the proper authority—section 1021. In any event, and even if the authorities before the trial court might be deemed inadequate, it is within the power of this court to grant relief based on pure issues of law, even though the same are raised for the first time on appeal. (*Palmer* v. *Shawback* (1993) 17 Cal.App.4th 296, 300 [21 Cal.Rptr.2d 575].)

action in tort growing out of a real estate transaction in which the agreement of the parties was to recover fees "in any 'lawsuit or other legal proceeding' to which 'this Agreement gives rise.' " (*Id.* at p. 1342.) The claim in that case was based on the alleged failure of brokers to conduct a competent inspection of the property being sold. The court concluded that the genesis of the relationship was the real estate purchase agreement, and hence the dispute arose therefrom. (*Id.* at pp. 1343, 1344.)

The agreement in this case was that "In any action, proceeding, or arbitration arising out of this agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs." As in *Xuereb*, the allegation of misrepresentation or negligence would not have come about absent the agreement of purchase of real estate, and hence the claim "arose" out of the agreement. We should also cite a later case, *Lerner* v. *Ward* (1993) 13 Cal.App.4th 155 [16 Cal.Rptr.2d 486], which is to the same effect as *Xuereb* but perhaps even closer to the facts of our case. In *Lerner* the attorney fee clause was identical to ours, and the claim, like that in our case, was fraud and misrepresentation by the sellers. The court affirmed that this clause created an entitlement to fees as a result of the tort action. (*Id.* at p. 160; see also *Palmer* v. *Shawback, supra,* 17 Cal.App.4th 296, 299.)

██ Plaintiffs' second contention of error in the granting of attorney fees is also to be denied, but not quite so easily as the first. Plaintiffs cite section 581, subdivision (c) for the proposition that a plaintiff may dismiss the complaint as to any defendant "prior to the actual commencement of trial." When the complaint is dismissed before judgment, the reasoning goes, there is no "prevailing party." Since the provision for fees in this case vested entitlement only in a "prevailing party," the court was without power to award them.[7] As noted in our footnote 7, *ante*, we accept the argument that if plaintiffs were successful in dismissing their case against the Hamiltons

---

[7]Before the adoption of Civil Code section 1717 a contractual provision for fees did not permit recovery by a defendant when the plaintiff voluntarily dismissed the action. (*International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 223 [145 Cal.Rptr. 691, 577 P.2d 1031].) Civil Code section 1717, providing a reciprocal right to fees for a "prevailing party" when a contract provided for fees for either party, specifically stated in subdivision (b)(2) that "there shall be no prevailing party for purposes of this section" when an action is voluntarily dismissed. Several cases have held that voluntary dismissal therefore precludes an award of attorney fees when the entitlement is based on Civil Code section 1717. (See, e.g., *Rosen* v. *Robert P. Warmington Co.* (1988) 201 Cal.App.3d 939, 942 [247 Cal.Rptr. 635].) Parties to an agreement are nevertheless presumably entitled under section 1021 to provide for fees under any circumstance which might be deemed reasonable or equitable, including fees to a defendant in a voluntarily dismissed case (see *International Industries, Inc.* v. *Olen, supra,* 21 Cal.3d at p. 224; *Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 272-274 [81 Cal.Rptr. 849, 461 P.2d 33]). However, when the agreement limits recovery to a "prevailing party," we see no reason not to define such in accordance with cases decided under Civil Code section 1717, which conclude there is no prevailing party when the plaintiff

before summary judgment was rendered, they would have been able to avoid exposure to attorney fees.[8]

The question, then, is whether the plaintiffs were successful in their attempted prejudgment dismissal. As noted from the factual recitation above, the court recorded a telephonic ruling sustaining the summary judgments; plaintiffs thereupon asked for oral argument and a hearing was scheduled; then plaintiffs dismissed before the oral argument. Plaintiffs' position is that the telephonic ruling was in the nature of a tentative decision, constituting only an indication of what the court intended to rule, but preliminary and not yet binding. (See 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 374, p. 380 [procedure before 1981]; *id.*, § 395, pp. 402, 403 [procedure after 1981].) The Hollisters' contrary position, which is also that of the trial court, is that the telephonic ruling was a final ruling, subject only to reconsideration after the scheduled oral argument.

The resolution of this dispute depends upon a conclusion as to the nature of telephonic rulings. California Rules of Court,[9] rule 324 describes a "tentative ruling procedure" to be utilized in civil law and motion matters. It does not describe the procedure presently used by our law and motion departments involving telephonic rulings. That procedure is set forth in San Diego County Superior Court Rules, rule 4.4, titled Telephonic Rulings.[10] This rule provides that civil departments "may render recorded telephonic rulings" and that these rulings "are not tentative rulings and become the order of the court as of the date rendered." The rule further states that oral argument may be requested on a date following the date of the telephonic ruling, but that the pendency of oral argument shall not affect the finality or effectiveness of the telephonic ruling. It would appear that the court's consideration of oral argument after the rendition of its telephonic ruling is somewhat in the nature of a reconsideration hearing (see § 1008, subd. (a)

---

voluntarily dismisses before trial. (See *Rosen* v. *Robert P. Warmington Co., supra,* 201 Cal.App.3d at p. 943.)

[8]While we cannot state with any assurance that plaintiffs' purpose in dismissal was to attempt to avoid a fee order, it would appear from their citation of Weil and Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 1993) paragraph 11:39.3, that this may have been the case. The authors therein suggest: "For example, if you're opposing a motion for summary judgment and there is a likelihood the motion will be granted, it may be a good idea to recommend to the client that the action be dismissed without prejudice before the hearing. This will prevent any fee award against your client."

[9]All rule references are to the California Rules of Court unless otherwise specified.

[10]Local court rules constitute valid and enforceable rules when not inconsistent with statutes or Judicial Council rules. (Gov. Code, § 68070; and see 2 Witkin, Cal. Procedure, *supra,* Courts, § 154 et seq., p. 181 et seq.; and see §§ 575.1 and 575.2 which specify the procedures by which local rules may be adopted and the sanctions which may be imposed for their violation.)

and *Dameshghi* v. *Texaco Refining & Marketing, Inc.* (1992) 3 Cal.App.4th 1262, 1283 [6 Cal.Rptr.2d 515]). The court clearly by its local rule retains the power to amend the telephonic ruling. Unless amended, however, the ruling is effective on the date first rendered.

*However,* at the time of the telephonic ruling we now consider, the San Diego local rule did not read as it now does. The rule provided the mechanism for telephonic communication of a ruling, and explained the procedure for obtaining oral argument. While the rule provided that the "motion will be decided on the date set forth," there was no mention of the immediate effectiveness or finality of the telephonic ruling. (Super. Ct. San Diego County Rules, rule 4.4, as amended July 1, 1992.) Whether, therefore, a telephonic ruling issued at the time of this ruling was tentative or final would appear to depend upon the intent of the court. Surely it would be within the power of the law and motion judge to issue a tentative ruling, perhaps even soliciting further argument or comment before making the ruling final.

The question is whether the court could issue a final ruling without granting an opportunity for oral argument. Section 1005.5 indicates the motion itself is complete and is "deemed to have been made" upon due service and filing of the notice of motion. Therefore, even though the notice of motion may specify that it will be made or heard on a specific day in the future, it is actually "made" by the filing of the paperwork. A number of code sections and rules would suggest that even though the motion may be so "made," the procedure is not complete until oral argument has been entertained. Section 1005.5 referenced above, for instance, states that the fact the motion is "made" when filed "shall not deprive a party of a hearing of the motion to which he is otherwise entitled." Section 1005 refers to a "time appointed for the hearing." Rules 321, 323, 324 and 329 (among others) refer to hearings of motions in phraseology which suggests a right to same. Rule 323, for instance, specifies in detail the limitations on presentation of evidence at motion hearings, but makes no mention of the possibility of limitation or preclusion of oral argument. Section 437c, which deals specifically with summary judgment procedures, references in several places the holding of a hearing. For instance, any objections to compliance with summary judgment procedural requirements "shall be made at the hearing or shall be deemed waived." (§ 437c, subd. (d).)

Notwithstanding all this language about hearings, it appears to be settled law that the court may determine a motion, including presumably a summary judgment motion, without permitting oral argument. The first such statement appears in *Morel* v. *Simonian* (1930) 103 Cal.App. 490, 495 [284 P. 694] (no right to argue a motion for new trial). This has been followed by numerous

additional judicial confirmations: *Collins* v. *Nelson* (1940) 41 Cal.App.2d 107, 113 [106 P.2d 39] (court has discretion to refuse to hear argument on motion for new trial [and, surprisingly, may also decline to receive or read the briefs]); *Oil Workers Intl. Union* v. *Superior Court* (1951) 103 Cal.App.2d 512, 581 [230 P.2d 71] (oral argument in general in court trial is a privilege, not a right); *Muller* v. *Muller* (1956) 141 Cal.App.2d 722, 731 [297 P.2d 789] ("It is, of course, the law, that a trial judge is not required to listen to oral arguments in support of a motion, but may, in his discretion, decide it solely on the basis of the supporting affidavits."); *Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 698, fn. 3 [321 P.2d 749] (motions made and heard on affidavits alone); *Sullivan* v. *Dunnigan* (1959) 171 Cal.App.2d 662, 669 [341 P.2d 404] (no error in denial of oral argument in support of motion for nonsuit); *Gillette* v. *Gillette* (1960) 180 Cal.App.2d 777, 781 [4 Cal.Rptr. 700] (argument properly precluded in court trial); *Haldane* v. *Haldane* (1962) 210 Cal.App.2d 587, 593 [26 Cal.Rptr. 670] (motion for marital support properly decided on basis only of paperwork); *Ensher, Alexander & Barsoom* v. *Ensher* (1964) 225 Cal.App.2d 318, 325 [37 Cal.Rptr. 327] (no error in refusing to hear argument on plaintiff's motion to reopen); *McLellan* v. *McLellan* (1972) 23 Cal.App.3d 343, 359 [100 Cal.Rptr. 258] (motion for fees may be decided on affidavits alone). Thus, although we usually prefer to rest a decision upon recent authorities of, say the 1980's or 1990's, the length and unanimity of this seasoned line of cases, stretching from 1930 to 1972, convince us of the proposition: a court may decide a motion without hearing oral argument. We note that the current San Diego County Superior Court Rules "may designate [that] no oral argument [will be] allowed." (Super. Ct. San Diego County Rules, rule 4.4(c).) We conclude that this is no more than a codification of existing law, which could have been the basis for the ruling made by the trial court in this case on the date the motion for summary judgment was rendered.

This conclusion is, however, dependent upon our determination that the court in fact *intended* its ruling to be determinative and not tentative. Our review of the record establishes that this was the case. The phraseology of the ruling as set forth in the minute order (quoted in fn. 3, *ante*) is that of a final order rather than a tentative decision. When the court ruled on the motion after oral argument it indicated it was familiar with the difference between tentative and final decisions, and also knew it was not required to entertain oral argument. It stated that its telephonic order was intended to be final, and that the effect of the request for oral argument was simply to stay the imposition of the order pending oral argument. The cancellation of oral argument by virtue of the dismissal of the Hollisters, the court ruled, had the effect of vacating that stay.

Our conclusion, therefore, is that summary judgment had been rendered by the court on August 28, 1992. The request for dismissal filed on September 3, 1992, coming after actual rendition of judgment, therefore had no

effect on the judgment. Cases on which plaintiffs rely are inapposite, since they deal with motions to dismiss made before a pending summary judgment motion has been heard (see *Rosen* v. *Robert P. Warmington Co.*, *supra*, 201 Cal.App.3d 939; *Datner* v. *Mann Theatres Corp.* (1983) 145 Cal.App.3d 768 [193 Cal.Rptr. 676]).

We are aware of the treatment of a closely related issue in *M & R Properties* v. *Thomson* (1992) 11 Cal.App.4th 899 [14 Cal.Rptr.2d 579]. There the court had issued what it identified as a tentative ruling to grant a motion to dismiss for failure to bring the case to trial in five years. A time was set for hearing of oral argument on the tentative ruling. Before that date arrived the plaintiff voluntarily dismissed the case. The court held that the voluntary dismissal could not prevail over the mandatory dismissal, even though the latter had been formally entered after the entry of the voluntary dismissal. In support of our conclusion in this case, the court in *M & R Properties* stated that the voluntary dismissal clearly would have been too late had the earlier ruling been final, as in our case. (*Id.* at pp. 901, 902.) "[A] plaintiff's right to a voluntary dismissal is cut off as of the moment there is a ruling which effectively disposes of the case." (*Id.* at p. 903.) The court went on to hold that the ruling in the case, even though "tentative," was a sufficient adjudication of rights to preclude voluntary dismissal. We have labored in this decision to distinguish between tentative and final rulings, resting our conclusion of preclusion of the power of voluntary dismissal upon our finding that it came after a final ruling. We do not, however, intend to suggest that we would not follow *M & R Properties* were we to have found the ruling tentative. The result of *M & R Properties*, as with the result in this decision, is to preclude the "testing of waters" by a plaintiff fearful of incurring attorney fees, to be followed by a voluntary dismissal when the water seems too hot. Such result is to be desired.

### 3. *The Award of Attorney Fees to Brokers*

As we have noted above, the award of attorney fees to the Hollisters is based on the fact that they were parties to a contract which provided for fees to the prevailing party, from any cause "arising" from the contract. We concluded that this created a fee entitlement under section 1021.

 Brokers are unable to base a claim for attorney fees on the same theory. They are not parties to the agreement. It would appear that the attorney fee clause in this case is similar, if not identical, to that in *Super 7 Motel Associates* v. *Wang*, *supra*, 16 Cal.App.4th 541. In that case, as in this, the issue was whether a real estate broker for the seller was liable to purchasers of real property for failure to disclose detrimental information

about the property. When the broker prevailed in defense of the action, we held he was not entitled to fees because he was not a party to the contract which contained the fee agreement. We could find no basis in *Super 7* for awarding fees to the prevailing defendant broker; the facts in this case are no different and we similarly cannot affirm a fee award.

Brokers argue that plaintiffs, in their complaint against brokers, sought attorney fees, and suggest that this contention somehow estops plaintiffs from taking the position that brokers are not also entitled to attorney fees under the purchase agreement. This argument would appear to derive from cases such as *Jones* v. *Drain* (1983) 149 Cal.App.3d 484 [196 Cal.Rptr. 827] and *Manier* v. *Anaheim Business Center Co.* (1984) 161 Cal.App.3d 503 [207 Cal.Rptr. 508]. The courts in these cases invoked equitable principles to justify the award of a fee to a prevailing party based on the losing party's pleading and prayer for a fee award, regardless of the losing party's actual entitlement to such an award (even assuming that the losing party had prevailed in the case-in-chief). As stated in *Jones* v. *Drain, supra,* at pages 489-490: "We believe that it is extraordinarily inequitable to deny a party who successfully defends an action on a contract, which claims attorney's fees, the right to recover its attorney's fees and costs simply because the party initiatiing the case has filed a frivolous lawsuit."

This position has, however, been rather conclusively discounted by subsequent cases. The court in *Leach* v. *Home Saving & Loan Assn.* (1986) 185 Cal.App.3d 1295 [230 Cal.Rptr. 553] characterized the *Jones/Manier* approach as follows: "These cases base their analysis of mutuality of remedy on an equitable estoppel argument: if one merely alleges a right to recover attorney's fees, one is estopped from contending that he or she could not recover them if the other party prevails and claims attorney's fees." (*Id.* at p. 1306.) The *Leach* court found this theory "not well-founded," and concluded that a nonsignatory defendant was entitled to receive fees based on the mutuality provision of Civil Code section 1717 only if the plaintiff in the contract action, in the event of prevailing, would have been entitled to fees. This result was reviewed and approved in *Myers Building Industries, Ltd.* v. *Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 962, footnote 12 [17 Cal.Rptr.2d 242].

We subscribe to the *Leach* analysis, which we believe is in harmony with the leading Supreme Court authority in the area, *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 127 [158 Cal.Rptr. 1, 559 P.2d 83]. The mere fact that a plaintiff alleges an entitlement to attorney fees does not create an entitlement to same by a prevailing defendant; it is only when the

plaintiff would have been entitled to fees had the plaintiff prevailed that a defendant will obtain a reciprocal right.[11]

## DISPOSITION

The fee award in favor of brokers and against plaintiffs is reversed; otherwise the judgments are affirmed. The trial court should issue a new and amended judgment form to reflect this determination.

Kremer, P. J., and Haller, J., concurred.

A petition for a rehearing was denied August 24, 1995, and appellants' petition for review by the Supreme Court was denied October 26, 1995.

---

[11]All of the cases we cite, and others as well, were reviewed in *Real Property Services Corp.* v. *City of Pasadena* (1994) 25 Cal.App.4th 375 [30 Cal.Rptr.2d 536]. That court did not note the disharmony in cases which we have suggested exists, but nevertheless came to a conlcusion with which we agree: "[I]n cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases: A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed. Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." (*Id.* at p. 382.)