Filed 2/27/13  Elder v. Schwan Food CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRED ELDER, | B238876 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC390535) |
| v. | |
| THE SCHWAN FOOD COMPANY et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John P. Shook and Steven J. Kleifield, Judges.  Affirmed.

Kutak Rock, Stephanie A. Hingle, Michael S. Kim and Alan L. Rupe for Defendants and Appellants.

Righetti Glugoski, Matthew Righetti, John Glugoski and Mike Righetti for Plaintiff and Respondent.

In *Elder v. The Schwan Food Company* (May 12, 2011, B223911) [nonpub. opn.])
(*Elder I*), the jury concluded by special verdict that plaintiff Fred Elder was misclassified
as an exempt employee and worked nine hours a day, and 45 hours per week. Elder was
awarded $9,944.42, in unpaid overtime wages, which was limited to the three-year period
preceding the filing of his complaint. The trial court did not award restitution for a
violation of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200
et seq.)[1] and denied Elder's request for civil penalties under The Labor Code Private
Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). (*Elder I*, at [pp. 3-
4].) We remanded the matter to the trial court to reconsider awarding restitution under
the UCL because the court could not disregard the jury verdict that the Schwan Food
Company (Schwan) violated the Labor Code.[2] (*Id.* at [pp. 5 -7].) We also concluded in
*Elder I* that the trial court had discretion to reduce the maximum amount of civil penalties
awarded under PAGA, but it had no discretion to outright deny civil penalties. (*Id.* at
[pp. 9-12]. )

Following remand, the trial court awarded Elder a fourth year of unpaid overtime
wages as restitution under the UCL and also awarded civil penalties. Schwan appeals,
contending reversal is mandated because the company was deprived of its right to request
and obtain a statement of decision as the trial court never announced a tentative decision
before ruling on the matter. Schwan also contends the trial court disregarded the
company's equitable defense under the erroneous belief that it was bound by the law of
the case doctrine to accept the procedural recitation in *Elder I*, in which we stated that the
jury had rejected the company's defense to the overtime claim that Elder was properly
classified as an exempt employee. We affirm.

---

[1]     Business and Professions Code section 17208 provides that "[a]ny action to
enforce any cause of action pursuant to this chapter shall be commenced within four
years after the cause of action accrued."

[2]     A business act or practice that violates the Labor Code through failure to pay
wages is an unfair business practice. (*Cortez v. Purolator Air Filtration Products Co.*
(2000) 23 Cal.4th 163, 178-179.)

FACTUAL AND PROCEDURAL BACKGROUND

1. *Schwan Misclassified Elder as an Exempt Employee*

In *Elder I*, the jury made findings by special verdict that Elder was not exempt from overtime wages under the outside salesperson exemption to the overtime laws, despite testimony from Schwan representatives that they believed Elder was exempt.[3] An outside salesperson is defined as any person "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities." (Cal. Code Regs., tit. 8, § 11070, subd. (2)(J).)

a. *Elder's Job Duties*

Elder was a customer sales representative for Schwan, supplying frozen Red Baron pizzas to local grocery stores. He testified regarding his job duties: "We presold orders within the 48-hour period. So you would go into a store and you would write an order and then transmit it – But when you first went into the grocery store, you would work the product. You didn't know if you needed a case of pizza or not on the shelf. So you work it, push it back. And if you needed it, you would go into the back room. If you had that item, you would bring it back in and merchandise it on the shelf. [¶] And then when everything was done, you could write an accurate order and then communicate that to the freezer person what you were bringing in in [*sic*] two days, whenever the truck was going to come. [¶] If we had sales promotions, if we were going to be on the display planner, so there was a planner set forth by the company. So, for instance, March food madness would be potentially the first week in March. We may have Red Baron on sale at Albertsons. So we would have a planner set up where we should have door number 1 or door number 2 for our space. So we would bring in the product and fill the shelf and for that space."

---

[3]     Labor Code section 1171 expressly excludes "any individual employed as an outside salesman" from the overtime laws. (Lab. Code, § 1171; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 789.)

Schwan also employed "merchandisers," whose job duties were to put the product on the shelf. Elder testified that he had merchandiser support, depending upon his assigned route.

Schwan's regional sales manager, Daniel Rowell, testified that he did not believe "merchandising product per se" is a sales task. He explained: "[W]hile you are merchandising product, you can perform sales tasks. [¶] You talk to the frozen food person while you are putting up product. You look to the left and to the right to see if there is opportunity to gain an incremental facing. So there is opportunity even while merchandising. [¶] Rotating product, certainly that would not be a sales task. [¶] Managing damaged product wouldn't be a sales task."

As Rowell further explained, stocking shelves could involve making a sales presentation. "You are presenting a billboard effect. You're merchandising so that when you are done, you step back and you look at it and there are six Red Baron faceup, and it looks like a billboard to the consumer as they walk by. So that is what I mean."

Rowell believed that based upon Elder's job description, Elder spent the majority of his time engaged in sales. Rowell also testified that he met with an attorney to ensure that Elder and similarly situated California employees were properly classified as exempt employees.

b. *Jury Rejects Outside Salesperson Exemption*

By special verdict, the jury answered "no" to the following three questions:

"1. Did Plaintiff Elder spend more than 50% of his time engaged in outside sales?

"2. If you find Plaintiff Elder did not spend more than 50% of his time engaged in outside sales, do you find that Plaintiff Elder was involved principally in the sale of a product or service?

"3. Was more than 50% of Plaintiff Elder's compensation comprised of commission wages?"

The jury also made a finding that Elder worked nine hours a day and 45 hours per week. Based upon these findings, the trial court calculated the amount of overtime pay

owed to Elder on his legal claims. Elder received $9,944.42 in overtime pay, plus prejudgment interest in the amount of $3,286.60, and post-judgment interest.

Schwan persuaded the trial court that Elder was not entitled to restitution or civil penalties. Elder appealed.

2. *Elder I*

In *Elder I*, we remanded the matter to the trial court to reconsider the equitable remedy under the UCL, and to determine the appropriate civil penalties under PAGA. We concluded the trial court was bound by the jury's findings that Elder had been misclassified as an exempt employee in violation of California's overtime laws, and Elder had established that he had worked overtime for which he had not received overtime wages. (*Elder I*, *supra*, B223911, at [p. 5].) We quoted *Cortez v. Puralator Air Filtration Products Co.*, *supra*, 23 Cal.4th at page 181, where the Supreme Court stated, " 'while we cannot foresee how any equitable consideration could defeat a claim for unpaid wages, we cannot foreclose the possibility that defendant has evidence that the trial court might consider relevant when, on remand, it fashions a remedy for plaintiff's unfair business practice.' " (*Elder I*, at [p. 6].)

We also concluded the trial court did not have discretion to forgo imposing any civil penalties under PAGA, but the court could exercise its discretion to impose less than the maximum amount. (*Elder I*, *supra*, B223911, at [pp. 9-12].)

Although Schwan did not raise the issue in a petition for rehearing, the company points out what it perceives as procedural error in *Elder I*, that is, our statement that the jury considered and rejected the company's equitable defense by finding that Elder was nonexempt. (*Elder I*, *supra*, B223911, at [p. 7].) Schwan relied on evidence presented to the jury to persuade the court not to award restitution under the UCL. Nevertheless, our decision in *Elder I* specifically directed the trial court to reconsider the company's evidence and to balance the equities when fashioning a remedy for Schwan's violation of the UCL. There is no indication in the record that the trial court did not follow this directive.

5

### 3. *Remand Following* Elder I

On remand, Schwan again asked the trial court not to award restitution for a fourth year of overtime compensation. Relying on the evidence presented to the jury, Schwan contended it had a good faith belief that Elder was exempt from overtime. Schwan also presented argument that while it would be unjust to retain a benefit (overtime wages) rightfully belonging to Elder, this case presented a number of unique circumstances that required the court to balance the equities in the company's favor. First, Schwan argued that it "has for years attempted to give Plaintiff his benefit back," but Elder opted out of a class action in which Schwan paid employees more than five hours per week in unpaid overtime compensation. Second, Elder pursued numerous claims against Schwan, and the jury rejected most of them, including Elder's claim that he was entitled to 15 hours of unpaid overtime wages per week. Third, only Elder's counsel would benefit because "the fourth year of overtime compensation" would exceed the offer to compromise made pursuant to Code of Civil Procedure section 998,[4] entitling Elder's attorneys to hundreds of thousands of dollars in attorney fees. Fourth, Elder never asked for overtime wages while employed by Schwan and waited nearly five years to put the company on notice that he should have been paid overtime.

In sum, Schwan argued that "[b]ut for Plaintiff's delay in asserting his rights to overtime and his unreasonable expectations about the value of his claim which caused him to opt out of *Wastier* [class action lawsuit], this matter never would have lingered in Court for over three years. Plaintiff is not entitled to a fourth year of overtime wages, particularly to the extent the pre-judgment interest on those wages bolster Plaintiff's claim to exceed Schwan's offer to compromise."

While presenting argument to the trial court, Schwan's counsel argued that in *Elder I* we held the court erred because it could not award "nothing for that year," and the Court of Appeal "remanded it to you to determine what amount should be entered." Continuing, counsel read into our opinion in *Elder I* that "if the Court of Appeals [*sic*]

---

**4**      Undesignated statutory references are to the Code of Civil Procedure.

had wanted a full year, they would have entered judgment for that year. Instead, they returned it to you to balance the equities."[5]

With respect to the civil penalties, Elder sought the maximum amount. Schwan countered that the company's good faith designation of Elder as an exempt employee was not a serious transgression of the Labor Code.

### 4. *Ruling, Judgment, and Appeal*

On October 24, 2011, after taking the matter under submission, the trial court issued a ruling on the submitted matter, which was entered in the court's minutes and mailed to the parties (October order). The trial court awarded Elder an additional $3,878.62 as restitution for the UCL violation, bringing the total awarded for unpaid overtime wages to $13,823.04. The court also awarded $2,500 in civil penalties. The October order stated: "Plaintiff to file and serve a proposed judgment."

On December 6, 2011, the trial court signed the judgment that incorporated the language from the October order. Schwan timely appealed.

On appeal, Schwan contends the judgment must be reversed because the trial court (1) deprived the company of its right to request a statement of decision by not issuing a tentative decision, (2) improperly relied on the law of the case doctrine by accepting as true an erroneous recitation of the procedural history in *Elder I*, and (3) abused its discretion by awarding restitution and civil penalties and ignoring the "abundance of evidence," showing the company's good faith belief that Elder was an exempt employee. We discuss each contention in turn.

---

[5] At the conclusion of the argument, the trial court stated: "Well, I think one point of probable agreement between the parties is that the appellate opinion is the law of the case." In ruling on the submitted matter, the trial court did not refer to the law of the case doctrine. Schwan may not use the trial court's ambiguous and contemporaneous remarks, whether oral or written, to impeach its final judgment. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 350, pp. 402-403, citing *Patarak v. Williams* (2001) 91 Cal.App.4th 826, 830.)

DISCUSSION

1. *The Failure to Prepare a Statement of Decision Is Not Reversible Error*

Schwan contends it was deprived of its right to a statement of decision because the trial court did not issue a tentative decision that triggered the company's statutory obligation to request a statement of decision. (§ 632.) Section 632 states: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at trial." When a party "requests a statement of decision, it must be prepared, and the failure to do so is reversible error. [Citations.]" (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127.)

Section 632 must be read in conjunction with California Rules of Court, rule 3.1590, which governs the procedure for issuance of a statement of decision. "On the trial of a question of fact by the court, the court must announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk." (Cal. Rules of Court, rule 3.1590(a).) The rules require that the trial court announce an intended decision rather than making a final order or judgment to give a party an opportunity to request a statement of decision to address the principal controverted issues. (*Id*., (d).)

Assuming the trial court's resolution of whether to award restitution for a violation of the UCL constituted "disputed issues of fact," the trial court had to issue a tentative decision. (Cal. Rules of Court, rule 3.1590(a).) The October order filed with the court clerk satisfies the requirements in the rules, and Schwan should have requested a statement of decision within the statutory time frame. Contrary to Schwan's contention, rule 3.1590(a) of the California Rules of Court does not require that the court label its written order a "tentative decision," or require that the tentative decision contain the provisions set forth in California Rules of Court, rule 3.1590(c). These provisions are not

8

mandatory.[6]  (Cal. Rules of Court, rule 3.1590(c).)  Moreover, neither rule 3.1590 of the California Rules of Court nor section 632 require that a party *must* wait until the trial court announces its tentative decision to request a statement of decision.

Citing *Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 614, disapproved on other grounds in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 609, footnote 5, Schwan contends that the phraseology of the October order, including the use of the present tense instead of the conditional tense, indicates the trial court's order was determinative and final.  *Sweat v. Hollister* is inapposite.

In *Sweat v. Hollister*, the plaintiffs challenged the trial court's order awarding attorney fees to the prevailing defendants because the plaintiffs dismissed the action after the court issued a telephonic ruling granting summary judgment but before oral argument.  (*Sweat v. Hollister*, *supra*, 37 Cal.App.4th at pp. 610-612.)  The question of whether the defendants were entitled to attorney fees turned on determining if the telephonic ruling was final when the plaintiffs filed their dismissal.  (*Id*. at p. 613.)  Reviewing the order, the appellate court determined the phraseology of the ruling as set forth in the minute order was final and nothing in that order contemplated the preparation of a subsequent judgment.  The *Sweat* court also noted that the trial court was "familiar with the difference between tentative and final decisions," "its telephonic order was intended to be final," and oral argument "was simply to stay the imposition of the order pending oral argument."  (*Id*. at p. 614.)  Thus, the cancellation of the oral argument by virtue of the dismissal, vacated the stay, not the trial court's decision.  (*Ibid.*)

Unlike the telephonic order in *Sweat v. Hollister*, *supra*, 37 Cal.App.4th 603, the October order was not a final judgment.  The October order indicated which party should

---

[6]     California Rules of Court, rule 3.1590(c) states:  "The court in its tentative decision may: [¶] (1) State that it is the court's proposed statement of decision, subject to a party's objection under (g); [¶] (2) Indicate that the court will prepare a statement of decision; [¶]  (3) Order a party to prepare a statement of decision; or [¶]  (4) Direct that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision."

prevail, setting out the court's opinion about how the judgment eventually should be entered, and requested that Elder prepare a proposed judgment. Until judgment was entered, the October order was not binding on the court. (Cal. Rules of Court, rule 3.1590(b) ["The tentative decision does not constitute a judgment and is not binding on the court."].)

While Schwan maintains the October order was not a tentative decision, the company failed to bring to the trial court's attention that under rule 3.1590(a) of the California Rules of Court, the court had to announce its tentative decision. If Schwan did not consider the October order a tentative decision, it could have asked the trial court to cure what it now perceives as a reversible procedural error before the court signed the judgment. Schwan made no attempt to do so after receiving the October order or during the six-week period before the court signed the judgment. Schwan also made no request for a statement of decision at any time during the trial court proceedings and raised this issue for the first time on appeal. Under these circumstances, there is no reversible error.

2. *The Trial Court Did Not Erroneously Apply the Law of the Case Doctrine*

Schwan contends the trial court erred because the decision to award restitution is based upon the erroneous belief that our procedural recitation in *Elder I* was "law of the case." Thus, according to Schwan, the trial court did not consider the company's equitable defense or balance the equities before awarding Elder restitution for the company's UCL violation. The record and law does not support this argument.

Law of the case only applies to questions of law not the procedural history of a case. " 'The law of the case doctrine states that when, in deciding an appeal, an appellate court "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal." ' " (*ABF Capital Corp. v. Grove Properties Co.* (2005) 126 Cal.App.4th 204, 212.)

In *Elder I*, we remanded and directed the trial court to balance the equities before deciding a remedy for the company's UCL violation. As Schwan's counsel argued in the trial court following remand, we did not direct the trial court to award a fourth year of

10

unpaid overtime wages to Elder, nor did we suggest to the trial court that it should disregard any equitable defenses. Because the jury rendered its verdict before the trial court considered the UCL claim, we noted in *Elder I* that the jury rejected the company's defense that Elder was properly classified as an exempt employee. (*Elder I*, *supra*, B223911, at [p. 7].) Our decision in *Elder I*, however, was clear that the trial court had to balance the equities before awarding an equitable remedy.

On remand, Schwan's counsel argued that the balance of equities favored the company. Schwan relied on, and cited to, evidence presented during trial, including Rowell's testimony, which the jury rejected. In addition, Schwan presented several arguments that it would be unjust to permit Elder to recover a fourth year of unpaid overtime wages.

The record indicates that the trial court considered the briefs (which included citation to the evidence presented at trial) and Schwan's arguments. There is no indication that the trial court disregarded our directions in *Elder I*. During oral argument, the trial court read the following from *Elder I*: "We remand for the trial court to reconsider the remedy and balance the equities. . . . [¶] In doing so, the trial court must not overlook the jury's verdict. The strong public policy directed at the enforcement of California's overtime laws and for purposes of the U.C.L., as between the person enriched and the person harmed, it would be unjust for the company to retain the benefit." Schwan has made no affirmative showing of error.

3. *Schwan Has Failed to Meet Its Burden to Demonstrate Prejudicial Error*

Schwan contends that the trial court disregarded its equitable defense, ignoring evidence supporting a reduction of both restitution and the civil penalties awarded to Elder. Schwan overlooks that the trial court exercised its discretion to reduce the amount of civil penalties requested.[7] (Lab. Code, § 2699, subd. (e)(2).)

---

[7] Schwan's attempt to distinguish the facts in *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213-1214, is unpersuasive. In making this argument, Schwan asks this court to consider the evidence anew. On review, the trial court's assessment and reduction of the requested civil penalties was not an abuse of discretion. Moreover,

11

Schwan's contention is really an argument about the sufficiency of the evidence to support its equitable defense, and the insufficiency of the evidence to support the judgment. We begin with the presumption that the record contains evidence to support the judgment. (*Grassilli v. Barr* (2006) 142 Cal.App.4th 1260, 1278.) On appeal, we do not weigh conflicts and disputes in the evidence. Our review begins and ends with a determination as to whether there is any substantial evidence contradicted or not, in support of the judgment. (*Id*. at p. 1277.)

Other than asking this court to substitute its discretion for that of the trial court, Schwan has failed to show the evidence does not support the judgment. There was sufficient evidence in the record to award restitution and to assess civil penalties for a violation of California's overtime laws. Thus, there was no prejudicial error.

---

Schwan has presented no reasoned argument (other than its view that Elder should not have independently pursued this claim) or authorities that the civil penalty the trial court imposed was unjust, arbitrary and oppressive, or confiscatory.

DISPOSITION

The judgment is affirmed.  Elder is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

13